693 So.2d 270 (1997)
Maurio BROWN, Plaintiff-Appellee,
v.
LOUISIANA INDEMNITY COMPANY, et al., Defendants-Appellants.
No. 96-1393.
Court of Appeal of Louisiana, Third Circuit.
April 23, 1997.
*271 J. Wendel Fuselier, Kenneth Perrell Fuselier, Oakdale, P.J. Laborde, for Maurio Brown.
Daniel G. Brenner, Alexandria, for Louisiana Indemnity Co., et al.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
THIBODEAUX, Judge.
This appeal concerns a one-vehicle accident which resulted in the death of one passenger, Shawn Brunson-Ballard, and serious injuries to passengers, Jesse Green and Maurio Brown. The injured parties filed suit to recover damages against Reginald Taylor, the driver of the automobile; his insurer, Louisiana Indemnity Company; and the State of Louisiana, Through the Department of Transportation and Development. Following a bench trial, the court rendered a judgment which awarded $275,000.00 to the natural mother of Shawn Brunson-Ballard and $275,000.00 to his father; a total of $906,048.78 to Jesse Green; and a total of $462,342.39 to Maurio Brown. Seventy-five percent of the fault was assessed to the State of Louisiana, Through the Department of Transportation and Development (DOTD), and 25% of the fault was assessed to defendant, Reginald Taylor, the driver of the vehicle. Further, the trial judge denied the DOTD's exceptions of no right of action and prescription. The DOTD appeals that judgment. Plaintiffs answer the appeal asking that 100% of the fault be assessed to the DOTD and that the damages award be increased.
The cases were consolidated. Our reasons for decision appear in this case, and separate judgments are being handed down today in the others, Willie Ballard v. Louisiana Indemnity Co., et al., 96-1394 (La.App. 3 Cir. 4/23/97); 693 So.2d 278 and Jesse Green, Jr. v. Louisiana Indemnity Company, et al., 96-1395 (La.App. 3 Cir. 4/23/97); 693 So.2d 278.
It is well settled that an appellate court owes great deference to a trial court's factual findings. Rosell v. ESCO, 549 So.2d 840 (La.1989). Absent manifest error on the part of the trial court, the reviewing court shall not set aside its findings. Id. Abiding by this standard of review, we affirm the trial court's judgment finding no error in the trial judge's apportionment of fault, assessment of damages, or denial of DOTD's exceptions of no right of action and prescription. Additionally, we deny the relief requested in plaintiffs' answer.
We find the trial court's factual findings and written reasons for judgment to be legally sound and succinctly stated. We hereby incorporate them, in part, into this *272 opinion, adopt them as our own, and append as Appendix "A." As the trial judge did not address the issue of the statutory cap on damages assessed against the State of Louisiana, we must supplement his reasons for judgment with a discussion thereof.

STATUTORY CAP
The DOTD asserts that the awards to Jesse Green and Willie and Elaine Ballard exceed the statutory cap on damages assessed against the State, as set forth in La.R.S. 13:5106(B)(1). Our supreme court held La.R.S. 13:5106(B)(1) unconstitutional in Chamberlain v. State, Through Department of Transportation & Development, 624 So.2d 874 (La.1993). Subsequent to Chamberlain and a constitutional amendment that allows a legislative imposition of a cap on existing claims, the first, second, and fifth circuits have all held that the effective date for applying a damages cap under La.R.S. 13:5106(B)(1) is the date of judicial demand. Farley v. State, Through Dep't of Transp. & Dev., 96-0538 (La.App. 1 Cir. 9/27/96); 680 So.2d 750, writ denied, 692 So.2d 1065 (La.12/13/97); 675 So.2d 1087; Holt v. State, Through Dep't of Transp. & Dev., 28,183 (La.App. 2 Cir. 4/3/96); 671 So.2d 1164, writ denied, 96-1132 (La.6/21/96); 675 So.2d 1080; Begnaud v. Dep't of Transp. & Dev., 95-714 (La.App. 5 Cir. 2/14/96); 679 So.2d 113, writ denied, 96-1244 (La.6/21/97); 675 So.2d 1087. Mr. Green and Mr. Ballard filed their petitions on June 13, 1989, and April 6, 1989, respectively. Because La.R.S. 13:5106(B)(1) was constitutionally invalid at the time of judicial demand, we conclude, as have other circuits, that no damages cap applies. Thus, the trial court's damage awards are affirmed.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed.
Costs of this appeal are assessed to the State of Louisiana, Through the Department of Transportation and Development in the amount of $2,948.10.
AFFIRMED.

APPENDIX "A"

MAURIO BROWN

VS. C-89-185

LOUISIANA INDEMNITY CO., ET AL.

33RD JUDICIAL DISTRICT COURT

PARISH OF ALLEN

STATE OF LOUISIANA

CONSOLIDATED WITH

WILLIE BALLARD

VS. C-89-184

LOUISIANA INDEMNITY CO., ET AL.

33RD JUDICIAL DISTRICT COURT

PARISH OF ALLEN

STATE OF LOUISIANA

CONSOLIDATED WITH

JESSE GREEN, JR.

VS. C-89-298

LOUISIANA INDEMNITY CO., ET AL.

33RD JUDICIAL DISTRICT COURT

PARISH OF ALLEN

STATE OF LOUISIANA

OPINION OF THE COURT ON MERITS
On March 11, 1989 the small vehicle being driven by Reginald Taylor left the paved portion of La Highway 10 about 6 miles east of Oakdale, Allen Parish, Louisiana, it traveled on the shoulder portion of the road and then became air borne when the vehicle hit an abandoned driveway and then crashed into a tree. The vehicle was split into two pieces and the passengers were severely injured. Sean Ballard was killed in the collision and Maurio Brown and Jesse Green were severely injured. Maurio Brown and Jesse Green filed actions against the State of Louisiana Department of Transportation and Development seeking damages as a result of the accident. Elaine Ballard the natural mother of Sean Ballard and Willie Ballard *273 the natural father of Sean Ballard have filed a wrongful death action against the State. The Court will in this opinion rule on the exceptions of no right of actions and no cause of action filed by the defendant.
It is the contention of defendant State of Louisiana Department of Transportation and Development herein referred to simply as "La. DOTD" that the sole cause of the accident on March 11, 1989 was the actions of the driver Reginald Taylor. This is primarily based upon the report of the State Policeman that when the vehicle left the road or paved portion of Louisiana Highway 10 that the driver was probably asleep. The State also had as an expert witness Joe Blaschke who demonstrated that the slope on the shoulder at the curve of Louisiana Highway 10 posed no unreasonable risk of danger to the traveling public. He also was of the opinion that the sole cause of the accident was that the driver was probably asleep at the time of the accident due to fatigue and lack of sleep. The driver and his friends had gone to Ville Platte and partied most of the night. The accident occurred at 4:30 a. m. The State concludes its argument with this statement:
"Thus, regardless of whether the Court accepts the more plausible theory of driver fatigue, or considers the testimony that Reginald Taylor offered at trial that he was distracted by a driver in another vehicle following his car prior to the curve, the one thing remains clear: the vehicle left the paved portion of Louisiana Highway 10 through no fault of this defendant."
It is the contention of the plaintiffs that the negligence of Reginald Taylor, the driver, in running off the road and the inaction (negligence of LA DOTD) in failing to restore the shoulder of the road and failing to conform the abandoned driveway to an appropriate shoulder slope combined to cause the accident and resulting harm. In other words the negligence of Reginald Taylor and the negligence of LA DOTD were both substantial factors in causing the injuries suffered by the plaintiffs. The Court after considered all of the evidence including the testimony of the experts accepts this theory that it was the combined negligence of the driver and the negligence of LA DOTD that caused the accident and resulting damages. Plaintiffs produced a number of witnesses including DOTD employees and records which proved that the section of LA Highway 10 where the accident occurred was not properly maintained.
It is abundantly clear from the testimony of all Evangeline Parish DOTD workers that training was non-existent. Scheduling was haphazard at best, and preventive maintenance work on the shoulders of Louisiana Highway 10 was simply not done.
There is no satisfactory explanation for the reason preventive maintenance work (i.e. restoring/leveling shoulders) was not done because it is quite clear that DOTD had actual or constructive notice of this defect prior to the accident of March 11, 1989, and it had a reasonable opportunity to remedy the defect, yet it failed to do so.
The evidence is clear that the Evangeline Parish Maintenance Superintendent, Michael Napoli, knew or should have known of the defective shoulder condition, because he inspected all roads, shoulders and ditches in his jurisdiction at least once every two weeks. This is confirmed by the "Superintendent's Pre-Scheduling Inventory Report". (Exhibit P-17) Furthermore, Rayburn Doyle and Thomas Doyle, both of whom live near the accident scene, testified that they contacted various officials about the condition of the road and shoulders where the accident occurred. Additionally, Ervin Willis, who also lived near the accident scene, testified that he had personally called the Evangeline DOTD Unit, and he even called the DOTD office in Baton Rouge regarding the defective road and shoulder conditions at the scene of the accident!
Each of these witnesses testified that frequently vehicles ran off the road and either damaged their property, landed in the ditch, or lost hubcaps in the curve. This was true for traffic headed west as well as east, and traffic traveling during the daytime as well as at night time.
Plaintiffs' experts, Duaine Evans and James Justice testified at length about the *274 defects in the shoulders at the scene of the accident. The defect of primary importance in this case was the excessive slope of the shoulder where the vehicle driven by Reginald Taylor left the surface of the road (and for some distance east and west of that point). The shoulder slope was excessive at various points along the path of Reginald Taylor, and at some points the slope was more than double the allowable slope per foot. The effect of the excessive slope was to pull Taylor's vehicle away from the travel lane and toward the ditch. Duaine Evans testified that from the moment the right wheels of the vehicle left the asphalt surface, Reginald Taylor had no chance of recovery regardless what he would have done.
It is noteworthy that DOTD's own reconstruction plans and drawings of 1965 called for 0.0 deg. slope of the shoulder at the point where the vehicle left the asphalt surface of the road. There is no reason to believe that the construction plans were not followed. Both Duaine Evans and James Justice testified that in their opinion it took years of erosion for this shoulder cross-slope to get in the condition it was in when it was measured by James Justice only a few weeks after the accident occurred. In his testimony James Justice testified that in a 400 foot section, including the scene of the accident, he found the slope to be .01 to .09 slope. Mr. Evans measured the slope from the edge of the abandoned driveway westward and found the slope to be as much as 1.6' per foot. This is more than double the acceptable slope.
Duaine Evans testified that the "shoulder slope" was a "major contributor to the accident and resulting injuries". James Justice stated that the excessive slope was a "significant factor" in the cause of the accident and resulting injuries.
One of plaintiffs' experts testified that if the cross-slope of the shoulder had not been excessive, and if the connecting abandoned driveway had not also contributed to the accident, Reginald Taylor may have had an accident anyway, but it probably would have been a "turn over" rather than a collision with the pine trees. He also stated that if the vehicle had turned over, this would have most likely been a less severe accident. Unfortunately, the cross-slope was excessive, and unfortunately the DOTD did nothing to level the abandoned driveway so that its surface would conform to the appropriate cross-slope, and both of these "inaction's" contributed to the severity of the accident which did occur.
James Justice and Duaine Evans pointed out that at the point where Reginald Taylor first left the asphalt surface, he had already successfully negotiated between 51% and 57% of the curve. Evans and Justice unequivocally stated that the Taylor vehicle would not have gotten that far into the curve if it had not been "steered" by Taylor.
Reginald Taylor testified at the trial that the headlights of a following vehicle were reflecting in his rearview mirror and bothering his driving. He conceded that after the accident, while he was on a gurney at the hospital, he told Trooper Ardoin that it was "possible" he may have fallen asleep, but he did not think he had done so. All witnesses, including Trooper Ardoin, admitted that it did not seem to make sense that Reginald Taylor would be asleep a the wheel if the headlights of a following vehicle were bothering his driving! Defendant's expert, Mr. Blaschke, was the only one who steadfastly refused to admit that Reginald Taylor more likely than not was awake at the time he left the asphalt surface of the road. The facts prove Reginald Taylor was not asleep! He just advertently ran off the road.
A distinction must be made between the cause-in-fact of the accident, and the resulting harm which was caused by the accident. In this case if the cross-slope had not been excessive and if the connecting abandoned driveway had not been present, there probably would have been an accident anyway, but it probably would have been less severe. In other words the harm would have been substantially reduced. Since the accident might have happened anyway, under the facts of this case, DOTD alone had the exclusive power, control and duty to reduce the resulting harm, and DOTD did nothing. That breach makes DOTD more to blame than the driver, for the resulting injuries and fatality. Except to the extent that the driver's negligence *275 set the action in motion, the driver had no control over the resulting harm, and his negligence was not a substantial factor in causing the serious injuries and the fatality.
It was clearly the excessive cross-slope and the abandoned driveway which were responsible for propelling the vehicle toward the pine trees. The evidence overwhelmingly shows that the excessive cross-slope of the shoulder and the abandoned driveway were substantial factors in bringing about the injuries to Jesse Green and Maurio Brown and the death of Sean Ballard. There is no question that DOTD's fault is more substantial for the resulting harm than the fault of the driver. (See the well written dissenting Opinion of Judge Knoll in the case of Campbell v. Louisiana DOTD, 635 So.2d 1224 (La.App. 3rd Cir.1994)). This dissenting opinion became the unanimous opinion of the Louisiana Supreme Court when Justice Marcus authored the opinion of that court in Campbell v. Louisiana DOTD found at 648 So.2d 898 (La.1995).
It is noteworthy that in the Campbell case the driver, Mr. Ledford, unquestionable fell asleep when he was operating his vehicle. The vehicle ran off onto the right shoulder as it approached a curve, and the vehicle struck the bridge railing. DOTD's expert, Joseph Blashke was of the opinion that the negligence of the driver was the sole cause of the accident. On the other hand, plaintiffs' expert was of the opinion that it was the negligence of the driver combined with the negligence of DOTD (failure to place guardrails on the bridge) that caused the harm to the passengers in the vehicle. The Supreme Court agreed with plaintiffs and held the failure of DOTD to place guardrails on the bridge was "a substantial factor" in causing the injuries to one plaintiff and the death of another. Therefore DOTD was held liable to the plaintiffs for the damages sustained. Campbell v. Louisiana DOTD, supra.
In the case of Simpson v. State Through DOTD, 636 So.2d 608 (La.App. 1st Cir.1993) writ denied May 6, 1994, the Court reiterated that DOTD's duty to maintain all highways in the State system includes a duty to maintain reasonable safe roadways and shoulders. The duty is owed to those people who may drive on to the shoulder inadvertently, having no knowledge or reason to know of the defective condition that would make travel on the shoulder hazardous. Simpson, at p. 611 In that case three boys received substantial injuries when the pickup truck in which they were riding went out of control on a rural road and hit the railing of a trestle bridge under the "garde" of Louisiana DOTD.
This Court heard and evaluated the testimony of the expert witnesses. While each expert had good reasons to support his theory of the cause of the accident, the Court felt that the testimony of James Justice and Duaine Evans was more reasonable and believable than the testimony of defense expert Joseph Blaschke. The Court is of the opinion that the plaintiffs sustained their burden of proof with their experts. When combined with the other evidence presented by the plaintiff, their theory of the cause of the accident was more convincing to the Court.
The photographs and the video tape clearly illustrate that the above mentioned 4.4 mile section of Louisiana Highway 10 had poorly maintained travel lanes, narrow and uneven shoulders, and excessive cross-slopes on the shoulders. Additionally the road had a narrow "clear zone" with numerous trees and other objects within 30 feet of the edge of the travel lanes, and several sharp curves with no delineators. Ironically, Louisiana Highway 106 (which was wider, had fog lines, gentler curves and generally much safer) had several signs cautioning motorists "Drive Carefully Substandard Roadway"! Conversely, Louisiana Highway 10 (which was unanimously considered more dangerous by all DOTD maintenance workers from the Evangeline Parish Unit) had no such warning signs!
The over all condition of the 4.4 mile span of Louisiana Highway 10 was not only relevant, it was also very important in determining the liability of DOTD. It vividly revealed what Reginald Taylor had to contend with on the date of the accident. In the case of Hunter v. Department of Transportation and Development, 620 So.2d 1149 (La. 1993), the Louisiana Supreme Court not only considered *276 it relevant, but it condemned an entire 5 mile span of highway as unreasonably dangerous to left turning motorists because DOTD failed to provide an adequate median or turning lane for motorists.
The Louisiana Supreme Court had no hesitancy in finding La. DOTD at fault in cases where the shoulder is defective. There is no doubt in the Court's mind that this section of LA 10 where the accident occurred has defective shoulders and this defective condition together with the negligence of Reginald Taylor caused this accident.
The Court finds this case to be remarkable similar to the recent Supreme Court case of Campbell v. Louisiana Department of Transportation and Development, 648 So.2d 898 (La. 1995). In that case the La. DOTD had failed to install guard rails on a bridge. The Supreme Court held that the failure of DOTD to install guard rails on bridge which resulted in death of passenger after driver of automobile fell asleep and veered onto shoulder and automobile struck bridge abutment on opposite side of road; even though lack of guardrails did not cause driver to lose control of his vehicle, negligence of driver as well as failure of DOTD to place guardrails on bridge combined to cause harm to guest passengers in vehicle and DOTD's conduct was substantial factor in causing injuries. The trial judge apportionment of fault at 75% to DOTD and 25% to driver was reinstated by the Supreme Court as proper after the Court of Appeal had reduced DOTD's liability to 10%. In the present case it is not certain that Reginald Taylor was asleep. However this Court feels that as in the Campbell case, apportionment of fault should be 25% to driver, Reginald Taylor and 75% to the Louisiana Department of Transportation and Development.

QUANTUMJESSE GREEN, JR.
Defense counsel did not argue quantum in this case apparently being of the opinion that there was no liability on the part of La. DOTD. The Court finds the memorandum submitted by the plaintiffs to be well-written and factual on the injuries to Jesse Green, Jr. The Court sets the amount for past and future pain and suffering at the sum of $500,000.00. Additionally he is entitled to the sum of $100,000.00 for his loss of enjoyment of life. His loss of past and future earning capacity at the sum of $300,000.00. He is also entitled to recover his proven medical expenses of $6,048.78.

QUANTUMMAURIO BROWN
Again the Court accepts the factual history of the trauma suffered by Maurio Brown as shown in the memorandum submitted by the plaintiff's counsel and believes it to be factually correct. The Court is of the opinion that the injuries sustained by Maurio Brown were severe and that an award of $250,000.00 would adequately compensate him for his leg and brain injuries. His loss of earnings and earning capacity is set at the sum of $200,000.00 and he is entitled to recover his proven medical expenses of $12,342.39.

WILLIE BALLARD AND ELAINE GRIFFIN BALLARD
A more complicated case involves the loss of Sean Ballard and the right of recovery by his father and mother. Willie Ballard filed suit on April 7, 1989 for the wrongful death of Sean Ballard also known as Sean Brunson. On April 2, 1992 plaintiff filed a supplemental and amending petition and therein added Elaine Griffin Ballard as a party plaintiff. There is no dispute that Elaine Griffin Ballard is the mother of Sean Brunson. Defendant filed an Exception of No Right of Action in Willie Ballard's claim for wrongful death and Exception of Prescription to the claim of Elaine Griffin Ballard. At the time of Sean Ballard (Brunson)'s death [sic] Elaine Griffin Ballard was married to Horace Brunson, Jr. At the trial it was proven to the satisfaction of the Court that Willie Ballard was the biological father of Sean Ballard (Brunson). On November 20, 1988 Willie Ballard executed an Act of Legitimization before Nathan Benjamin Notary Public and in the presence of two witnesses. In the affidavit Willie Ballard stated he was the father and this was also proven at the trial. Prior to the execution of the affidavit Willie Ballard and Elaine Griffin Ballard had become legally married. They lived together even before their marriage *277 and raised Sean Ballard. The recent Supreme Court case of Chatelain v. State of Louisiana, Department of Transportation and Development, 586 So.2d 1373 (La.1991) held that critical requirement for classification of person as child under wrongful death statute is biological relationship between tort victim and parents; child or parents with biological connection to tort victim, whether legitimate, legitimated or illegitimate child, has right to bring action for wrongful death and survival damages. "Legitimization" is advantage by which attribute of legitimate child is fictitiously conferred, with all its consequences, upon child conceived outside of marriage and which operates in favor of both parents and child; legitimization has incontestable moral influence inducing transformation of irregular household into legitimate family. The Supreme Court further held that for legitimization by subsequent marriage these are two separate requirements: first, there must be marriage subsequent to child's' birth between biological father and biological mother of child; and second, there must be acknowledgment of child by parent or parents; parents' marriage without acknowledgment is insufficient to establish legitimization by subsequent marriage.
In the present case this test was met. Sean Ballard (Brunson) was born before the marriage of Willie Ballard and Elaine Griffin Ballard, his biological father and mother. The later affidavit by Willie Ballard in 1988 before a Notary Public and two witnesses was sufficient to legitimate Sean Ballard as the legal son of Willie Ballard and Elaine Griffin Ballard. As such they both have a claim for wrongful death for the loss of their son. In Succession of Josie M. Mitchell, 323 So.2d 451, 80 A.L.R.3d 209, the Supreme Court it was held that the marriage of child's mother to their natural father legitimated the children under the express terms of a code article, which provided for the legitimization of adulterous children by the marriage of their parents, despite the fact that at the time of their birth the mother was still married to her first husband, not withstanding another code article, which provided, that the husband of the mother is considered as the father of all children conceived during the marriage.
Inasmuch as Willie Ballard filed his suit timely for the loss of his son Sean Ballard, Article 1153 of the La Code of Civil Procedure states that an amendment which arises out of the same conduct, transaction or occurrence set forth in the original petition relates back to the filing of the original pleadings. There is no dispute that the amended claim arises out of the same conduct, transaction or occurrence set forth in the original pleadings. Therefore the amendment of the petition was timely and therefore the Exception of No Cause of Action as to the claim of Willie Ballard and the Exception of Prescription as to Elaine Griffin Ballard's claim are overruled and denied.
Although Sean's mother and father were not married at the time Sean was born, Sean Brunson began living with his father, Willie Ballard, when he was just one (1) year old and continued to live with and was raised by Willie Ballard until the day he died. Sean's legal name was Brunson, but in all of his dealings in the community of Oakdale, Louisiana and in all of his school records, he referenced himself as Sean Ballard evidencing his consideration of Willie Ballard as his father.
Sean Brunson enjoyed a normal, healthy and happy childhood. He had an active social life and was very active in various types of athletic events such as baseball and basketball. In fact, Sean and his father, Willie Ballard, coached a community softball team together in the later years before Sean's death. Sean's love for basketball was also evidence by his success in basketball which eventually landed him a basketball scholarship to Mississippi Delta Junior College in Moorehead, Mississippi. Additionally, when asked about some of the things that he and Sean used to do together, Willie Ballard stated that he taught him how to walk, ride a bike, fish and hunt, play baseball, how to improve his basketball skills, and most of all how to respect his elders.
Tragically, as a result of the accident in question, Willie and Elaine have lost a child *278 that was very close to them. There is no amount of money which can replace or bring back Sean Brunson, but defendant should be made to pay for the extreme grief and suffering incurred by Willie and Elaine.
In the present case Willie and Elaine Ballard clearly had a very close family relationship with their son, Sean. It is recognized that Sean was eighteen (18) years old and entering manhood. Nonetheless, he still lived with his parents and enjoyed a close relationship with them. The court awards $275,000.00 to Elaine Ballard and $275,000.00 to Willie Ballard for the loss of their son, Sean. Costs are to be paid by the defendant.
Thus rendered on this 22nd day of November, 1995 at Oberlin, Allen Parish, Louisiana.
 /s/ John P. Navarre
 DISTRICT JUDGE