761 So.2d 777 (2000)
Dorothy RUTTLEY, et al.
v.
Harry LEE, Sheriff for the Parish of Jefferson, David Roddy, and the Parish of Jefferson.
No. 99-CA-1130.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 2000.
*780 Leonard L. Levenson, Zara Zeringue, New Orleans, Louisiana, Counsel for plaintiffs-appellees.
David S. Fos Ansardi, Maxwell & Power, Kenner, Louisiana, Counsel for appellant-defendant.
Court composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
McMANUS, Judge.

FACTS
This is an action for damages arising out of an automobile accident which resulted in the death of Stacey Ruttley. The trial court assessed 80% liability to the Parish of Jefferson and 20% liability to the decedent. Damages were awarded to Mrs. Dorothy Ruttley, Stacey's mother; Ms. Sandra Ruttley Bolotte, Stacey's sister; and Mr. Ernest T. Ruttley, Jr., Stacey's brother. The Parish of Jefferson appealed. For the following reasons, we reverse in part, affirm in part, amend, and render judgment.
On September 10, 1993, Stacey was driving her 1992 Ford Mustang on Pritchard Street. She approached the intersection at Pritchard Street and Ames Boulevard and stopped at a stop sign. She then pulled her car into the intersection. Deputy David Roddy was responding to an emergency call. He saw a "blur" which was Stacey's car and slammed on his brakes, however, he was unable to avoid a collision with Stacey's car. Stacey died on the scene.
Suit was filed by Mrs. Ruttley, Mr. Ernest T. Ruttley, Jr., Ms. Sandra Ruttley Bolotte, and Ms. Sarah Ruttley for wrongful death, survivor's damages, and bystander damages. Named as defendants were Harry Lee in his official capacity as the Sheriff of Jefferson Parish, Deputy David Roddy, and the Parish of Jefferson.
On April 4, 1994, the Jefferson Parish Sheriffs Office filed a Peremptory Exception of No Cause of Action, arguing that only Mrs. Ruttley is entitled to survivor's benefits as the surviving parent and that the siblings of Stacey Ruttley are not entitled to survivor's damages because there is a surviving parent, citing LSA-C.C. art. 2315.2.
On February 24, 1999, the trial court granted the Sheriffs Peremptory Exception of No Cause of Action as to plaintiffs Ernest T. Ruttley, Jr. and Sarah Ruttley Otero and dismissed all causes they may have with prejudice. The trial court ruled that the exception as to Sandra Ruttley Bolotte was referred to the merits.
After trial on the merits, the trial court dismissed plaintiffs suit with prejudice against the defendants Deputy Roddy and Harry Lee, Sheriff for the Parish of Jefferson. The trial court then rendered judgment in favor of the plaintiffs against the defendant Parish of Jefferson in the amounts of:

Dorothy Ruttley $423,917.94
Ernest T. Ruttley, Jr. $ 8,395.60
Sandra Ruttley Bolotte $ 20,000.00

The parties entered into a stipulation that the vehicle that Stacey drove was valued at $10,494.50.
In its written reasons, the trial court found that the intersection of Ames Boulevard and Pritchard Street was dangerous because the intersection in the direction that Deputy Roddy traveled was obstructed by high weeds and overhanging tree limbs. The trial court further determined that the Parish of Jefferson had notice of the hazard because the Parish cut the grass around the area about every two weeks. Furthermore, Dorothy Gill called and complained about the intersection just days before the accident which claimed Stacey's life. The trial court found that *781 the sight obstructions were a cause in fact of the accident and that the Parish of Jefferson had knowledge of the intersection's obstructions. The trial court also found that Stacey was at fault because she failed to stop her car at a point where she could see both ways and she drove into the intersection when it was not safe.
The trial court awarded Mrs. Ruttley $150,000 for the pain and suffering that Stacey endured before her death, $300,000 for wrongful death, and $75,000 for bystander benefits. Ms. Bolotte received an award of $75,000 for bystander damages. Mr. Ruttley, Jr., was awarded $10, 494.50 for the loss of his car. The awards were then reduced by Stacey's 20% fault assessment. The Parish of Jefferson appealed this judgment.

TESTIMONY
Trooper Terrence Freese is employed by the Louisiana State Police in the motor carrier safety division. He has worked seven years for the Louisiana State Police and he investigates accidents in the course of his job. Trooper Freese was the primary officer investigating this accident that occurred on September 10, 1993, at the intersection of Pritchard Street and Ames Boulevard.
Trooper Freese testified that when he arrived on the scene, he saw a Jefferson Parish Sheriffs car partially in a ditch. Stacey's car was in the front of the deputy's car and Stacey's body was hanging outside of her car. From his investigation, Trooper Freese determined that the police car struck Stacey's vehicle on the passenger side and pushed it approximately 54 feet. Stacey's vehicle flipped over several times.
Trooper Freese testified that it took seven minutes from the time that he received the phone call for him to arrive at the scene. When Trooper Freese approached Stacey, he perceived that she was dead, but he did not attempt to take vital signs. Trooper Freese was aware that the accident occurred at about 9:27 A.M. and the EMT technicians arrived at 9:37 A.M.
Trooper Freese testified that there were vision obscurements on the corner of Pritchard Street and Ames Boulevard. Trooper Freese determined that, right before the accident, Stacey was facing west while traveling on Pritchard Street and approaching Ames Boulevard. At this time, Deputy Roddy was traveling southbound on Ames Boulevard. Since Deputy Roddy was on an emergency call, he was utilizing his visual emergency equipment; namely, his overhead lights and flashing headlights. Trooper Freese testified that weeds and trees were overgrown and prevented both Stacey and Deputy Roddy from seeing each other. When Stacey pulled into the intersection, Deputy Roddy collided into her. Trooper Freese determined that Stacey, with careful observation, had a 227 feet maximum field of view of northbound Ames Boulevard because of the shrubbery overgrowth. Trooper Freese testified that it is probable that the accident would not have occurred if there were no sight obstructions.
Trooper Robert Vittitoe testified that he is employed by the Louisiana State Police as a road trooper and he assisted Trooper Freese in investigating the accident on September 10, 1993. When Trooper Vittitoe arrived, both vehicles were in the ditch in the southeast quadrant of the intersection. Stacey was still inside of her vehicle.
Trooper Vittitoe conducted some sight line measurements and determined that the distance northbound on Ames Boulevard was around 300 to 350 feet. He marked it off in intervals of 50 feet and he parked his vehicle where he could see Trooper Freese's vehicle's front bumper. As a result of the sight line measurement, he determined that Stacey had a 227 feet maximum field of view of northbound Ames Boulevard. He further testified that the vegetation obscured Deputy Roddy's vision. Trooper Vittitoe opined that the obstruction was a factor in the accident.
*782 Michelle Angela Hawkins, Stacey's first cousin, testified that she was a witness to the accident on September 10, 1993. Ms. Hawkins was proceeding northbound on Ames Boulevard. As she was approaching Pritchard Street, she saw Stacey's vehicle before it stopped at the stop sign. Ms. Hawkins was about 10 feet away from Stacey's car when the police car driven by Deputy Roddy hit Stacey's car. At the time of impact Deputy Roddy had his emergency lights on. After the impact, Ms. Hawkins saw Stacey's car flip over about 3-4 times and land on the driver's side. Ms. Hawkins was slowing down to make a left turn onto Pritchard Street to go to her boyfriend's house. Ms. Hawkins testified that Stacey was familiar with the intersection because she traveled through it often to meet Ms. Hawkins at her boyfriend's house. Ms. Hawkins saw Stacey proceed across Pritchard Street, however, Ms. Hawkins did not know if Stacey saw her. Ms. Hawkins testified that she never signaled to Stacey to drive across Ames Boulevard.
After the impact happened, Ms. Hawkins ran over to Stacey's car and saw Stacey's body lying half in the car and half on the ground. Ms. Hawkins arrived near the body right after the impact and she did not see Stacey move or make noises. She called Mrs. Ruttley and notified her that Stacey had been in an accident. When Mrs. Ruttley arrived at the scene, Mrs. Ruttley fell to her knees, screaming and crying. At the time Mrs. Ruttley arrived, her daughter's car and body were covered by a canvas. Ms. Hawkins further testified that Mrs. Ruttley was there when the coroner moved Stacey's body.
Ms. Tanya Hunter-Amedee testified that she regularly passes the intersection of Ames Boulevard and Pritchard Street. Ms. Hunter-Amedee saw Stacey at a stop sign at Pritchard Street and Ames Boulevard. Stacey waited for Ms. Hunter-Amedee to pass. After that, Ms. Amedee looked in her rear view mirror and saw Deputy Roddy's vehicle crash into Stacey's car. Ms. Hunter-Amedee testified that the car was lodged on a fence at the corner of Pritchard Street and Ames Boulevard, but that it fell in an upright position. Ms. Hunter-Amedee testified that when she went to check on Stacey, she noticed Stacey's body between the front and the back seats of the car, and that she crawled on all fours to get into Stacey's car. Ms. Hunter-Amedee saw Stacey's left foot by the window while the rest of Stacey's body was in the car. Ms. Hunter-Amedee testified that Stacey's neck appeared broken, but that she was breathing and she had a pulse.
Dorothy Mae Gill testified that she is familiar with the intersection of Ames Boulevard and Pritchard Street because she travels through it often. She testified that she had problems with the weed and tree obstructions at the Ames/ Pritchard intersection. Ms. Gill testified that three days before Stacey's accident, she was almost involved in an accident and, as a result, she called Councilman Lawson and the "weed control people." She testified that the "weed control people" told her that they would take care of the obstructions at the Ames/Prichard intersection. On the day of the accident, Ms. Gill went to the scene because her daughter drove the same color car as Stacey and she feared that it was her child in the accident. When Ms. Gill saw Mrs. Ruttley at the scene, Mrs. Ruttley was very upset. She was with Mrs. Ruttley when Stacey's body was removed from the car by the coroner.
Charles M. Cousins testified that he resides on the southeast corner of Ames Boulevard and Pritchard Street. He is employed as an engineer with Jefferson Parish and has been so employed for 14-15 years. He testified that there were about 15-20 accidents at the intersection of Ames Boulevard and Pritchard Street prior to Stacey's fatal accident on September 10, 1993. Mr. Cousin testified that he made numerous complaints to Councilman Lawson's office about the Ames/Pritchard intersection.
*783 Mr. Cousins testified that there was a lot of grass and tree limbs sticking out in the roadway that obstructed a motorist's view. He testified that he tried to turn many times at that intersection and he found his view was obstructed. Mr. Cousins testified that the Parish of Jefferson has since installed a red light on that corner. At trial, Mr. Cousins testified that he did not remember whether he ever complained about sight obstructions at the Ames/Pritchard intersection.
Douglas Robert testified that he is employed by Jefferson Parish as a supervisor in the traffic engineering division under the Department of Engineering. Mr. Robert is responsible for the signals and pavement markings that occur in the unincorporated portions of Jefferson Parish. He also has to make sure that the intersections are maintained in accordance with the proper rules and regulations. Mr. Robert testified that accident reports are filed away according to intersections and are kept for reference should a problem be brought to the attention of the Department.
Mr. Robert testified that he tries to follow the current Institute of Transportation Engineers standards, the Manual on Uniform Traffic Control, and the American Association of the State Highway and Transportation Official (hereafter AASHTO) design standards. Mr. Robert further testified that according to AASHTO standards the sight line should be computed at ten feet for every mile per hour. Mr. Robert testified that if Ames Boulevard was a 30 mile an hour speed zone, the sight line for a motorist who was going to cross Ames Boulevard at Pritchard Street should be at 300 feet.
Prior to the accident on September 10, 1993, Mr. Robert was aware of a complaint from a constituent in August of 1992 about the utility poles restricting the sight line at the Ames/Pritchard intersection. The Parish of Jefferson also did a report that was completed in January of 1993 on the Ames/Pritchard intersection. The accidents that appear in the Ames/Prichard intersection report pre-date September 14, 1992. In 1992, the department did not see anything that indicated that there was any type of sight line problem. There were some accidents in which a driver stated he/she was unable to see the other car which had the right of way, however, the visual obscurement section of the police report was never checked off as a cause of any of those accidents.
George Dent was employed as a superintendent for Jefferson Parish and he testified that he would cut the grass and trees at the Ames/Pritchard intersection. He testified that he cut the grass at that intersection every 14 days and checked the area for vegetation overgrowth.
Sergeant Brian Legnon testified that he has been employed with the Jefferson Parish Sheriff's Office since July 11, 1977, and he is currently employed in the hit and run division of the section. He went to the accident scene on September 10, 1993, because he was a supervisor on the road and assigned to every unit accident on the Westbank.
At the scene, Sergeant Legnon pulled up to a stop sign on Pritchard Street to check the clearance sight distance for Ames Boulevard. He checked the sight restrictions from northbound on Ames Boulevard and noticed that the view was obstructed by weeds and a tree that hangs over the canal bank. Sergeant Legnon testified that a motorist would have to pull his/her vehicle past the stop sign to almost the edge of the roadway to see north toward Ames Boulevard.
Deputy David P. Roddy testified that he was employed by the Jefferson Parish Sheriff's Office on September 10, 1993. Deputy Roddy now works the street crimes division, but in 1993, he was in the patrol division and handled 911 calls. On September 10, 1993, Deputy Roddy was responding to a domestic call in which another officer had requested assistance. Deputy Roddy further testified that the *784 call is a priority call whenever an officer needs assistance. Deputy Roddy had his lights and sirens on when he crossed the intersection of Ames Boulevard and Barataria Boulevard. After that, he turned his siren off, however, he left his headlights and four strobe lights on.
Deputy Roddy was traveling at about 50-60 miles an hour, and he could not see the intersection because there were cars in his way. Deputy Roddy attributed the traffic as the main contributing factor of the accident. He saw six or seven cars northbound on Ames Boulevard as he was approaching that intersection. He testified that he saw a "blur" pulling out from Pritchard Street and he slammed on the brakes, however, he could not avoid crashing into Stacey's vehicle.
The Parish of Jefferson presented the testimony of Dr. Joseph D. Blaschke, who was stipulated to as an expert in transportation engineering, highway safety, and accident reconstruction. Dr. Blaschke testified that he examined the accident that occurred on September 10, 1993, by examining the accident report and photographs. He also read the depositions, inspected the site, and reviewed the surveyor's drawing.
Dr. Blaschke testified that he understood that this was an intersection accident involving a police car that was traveling southbound on Ames Boulevard and an automobile traveling westbound on Pritchard Street. Stacey, the driver of the automobile, stopped at the intersection and was in the process of crossing Ames Boulevard when this accident occurred.
At the time of the accident, the weather was good, the road was dry, and there were several vehicles on Ames Boulevard that were traveling both north and south of the intersection. Apparently, Stacey entered the intersection right in front of Ms. Hawkins's car while Ms. Hawkins was traveling northbound on Ames Boulevard. Dr. Blaschke testified that it was an unique decision because Stacey would have to yield to cars on Ames Boulevard. Dr. Blaschke testified that Deputy Roddy was traveling about 60 miles an hour and probably saw Stacey's vehicle at about 150 feet away from the point of impact.
Based on the photos, Mr. Blaschke opined that a driver at the stop sign at Ames Boulevard could see up to 300 feet. Dr. Blaschke did not attempt to place a car at the intersection coming southbound on Ames Boulevard or westbound on Pritchard Street.
AASHTO guidelines provide that the driver approaching the intersection should have seven seconds to see the vehicle approaching and the sight distance should be ten feet times the speed limit. He testified that the minimum sight line at the Ames Boulevard/Pritchard Street intersection is about 300 feet.
Dr. Blaschke testified that Stacey was about 12 feet from the edge line. However, Dr. Blaschke admitted that if a driver is 10 feet from the edge of the road and only sees 150 feet, then the road is a trap because it may not be possible to see an oncoming vehicle. Dr. Blaschke opined that the accident was not caused by sight obstructions.
Ernest Ruttley, Jr., Stacey's brother, testified that Stacey lived with him and Mrs. Ruttley. He further testified that they were a close family and that Stacey was the baby of the family. He also testified that the car that Stacey drove was titled in his name, but he let her have it to drive their mother when necessary.
Sandra Ruttley Bolotte testified that she lives near her mother's house and she saw her sister Stacey often. She further testified that Stacey was godmother to her middle son, Darren. Ms. Bolotte testified that Stacey was really close to her mother. On the day of the accident, Ms. Bolotte testified that a police officer brought her and her husband to the accident scene. At the scene, Ms. Bolotte met her mother who already knew that Stacey had passed away in the accident. Ms. Bolotte went to Stacey's car and saw the blood in it. Ms. *785 Bolotte testified that her mother gets angry more often and does not attend church as much now that Stacey is dead.
Mrs. Ruttley testified that she was a homemaker. She further testified that they were a close family and that Stacey was "my baby." Stacey and her mother watched T.V. together, ate supper together, and talked a great deal.
On the day of the accident, Mrs. Ruttley testified that her niece, Ms. Hawkins, called her to tell her that Stacey had been in a bad accident. When she arrived at the scene, Mrs. Ruttley was informed that her daughter had passed away and she fell to her knees. She further testified that the car was covered with a canvas. Mrs. Ruttley never actually saw her daughter's body being removed because the canvas was over it. The police officers did not permit Mrs. Ruttley to go to the car. She testified that she has trouble sleeping now because she thinks about Stacey, and she is currently taking Zanax as a sleeping aid.

Causation
Jefferson Parish argues that the plaintiffs did not prove causation because they did not have a reconstruction expert to reconstruct the accident and explain the reason that Stacey pulled into the intersection. Plaintiffs respond that they carried their burden of proving, by a preponderance of the evidence, that the sight obstructions at the intersection were a substantial cause of the accident. Plaintiffs also maintain that the Parish of Jefferson failed to properly trim the foliage.
Louisiana law provides two theories under which the Parish of Jefferson may be held liable for damages; negligence, based on LSA-C.C. art. 2315, and strict liability, based on LSA-C.C. art. 2317. Traditionally, these theories could be distinguished because, under strict liability, a plaintiff was relieved of proving that the owner or custodian of a thing which caused damage knew or should have known of the risk involved. Campbell v. Louisiana Dept. of Transp. and Development, 94-1052 (La.1/17/95), 648 So.2d 898, 901; LSA-R.S. 9:2800. LSA-R.S. 9:2800 eviscerates this distinction in claims against public entities, however, by requiring proof of actual or constructive notice of the defect which causes damage. Thus, the burden of proof is now the same under either theory. The plaintiff must establish that the thing which caused the damage was in the custody of the defendant, that the thing was defective because it had a condition which created an unreasonable risk of harm, that defendant had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause in fact of plaintiffs injuries. Bessard v. State, Dept. of Transp. and Development, 94-0589 (La.11/30/94), 645 So.2d 1134, 1136; Oster v. Dept. of Transp. and Development, 582 So.2d 1285, 1288 (La.1991).
The Parish of Jefferson has a duty to maintain public roads in a safe condition so as not to expose the public to unreasonable dangers. Holt v. State Through Dept. of Transp. and Development, 28,183 (La.App. 2 Cir. 4/3/96), 671 So.2d 1164, 1170, writ denied, 96-1074 (La.6/21/96), 675 So.2d 1093. The Parish of Jefferson, while not the insurer of the safety of drivers using state highways, cannot knowingly allow a condition to exist that is hazardous to a reasonably prudent motorist. Id.
Causation is a fact-specific inquiry. Rick v. State, Dept. of Transp. and Development, 93-1776 (La.1/14/94), 630 So.2d 1271, 1275. Great deference is accorded to the trier of fact on the issue of causation.Id.
In this case, the trial court found that it was difficult to see clearly onto Ames Boulevard from Pritchard Street because of the sight obstructions in the right of way. The record supports the trial court's conclusions. Both Trooper Freese and Trooper Vittitoe stated that they found that the visual obstructions caused *786 the sight line to only be 227 feet from the stop sign at Ames Boulevard.
Ms. Gill testified that she complained numerous times to Councilman Lawson and the "weed control people" about the sight obstructions at the Pritchard/Ames intersection. George Dent, superintendent for Jefferson Parish, testified that he cut the grass and trees at the Ames/ Pritchard intersection every 14 days and checked the area for vegetation overgrowth. Further, it is clear that several accidents had occurred at that intersection because drivers did not see the other vehicles approaching. The shrubbery and tree limbs could have easily been cut or removed, thereby removing the obstruction.
LSA-R.S. 48:35 provides that the Parish of Jefferson should conform to the safety standards promulgated by the AASHTO with respect to the design, construction, and maintenance of highways. Dr. Blaschke, the defendant's expert, testified that the sight line should be 300 feet at the Pritchard/Ames intersection because the speed limit on Ames Boulevard is 30 miles per hour. From the photographs, he determined that the distance at that intersection was 300 feet. Trooper Freese and Trooper Vittitoe testified that they measured the distance at the scene and it was 227 feet. The trial court found Trooper Vittitoe's and Trooper Freese's testimony credible. While the plaintiffs did not produce an expert on accident reconstruction as part of their case, it is clear that there was sufficient testimony to determine that the sight obstructions were a cause in fact of this accident.
An appellate court may not set aside a trial court's findings of fact in the absence of clear or manifest error. Stobart v. State, Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844-845 (La. 1989). To reverse a trial court's factual determinations, a court of appeal must find, from the record, that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
We find sufficient support in the record for the trial court's factual findings that the sight obstructions on the right of way on Ames Boulevard posed an unreasonable risk of harm and that this defect was a cause-in-fact of Stacey's injuries. See Holt, 671 So.2d at 1172. We cannot conclude that these findings are either clearly wrong or manifestly erroneous.
Having found no error in the trial court's assessment of some liability/fault on the part of defendant, Parish of Jefferson, we now examine the trial court's determination that Stacey was also negligent in causing the accident.
Individual drivers owe a duty of being reasonably observant of conditions that either might affect the operation or use of their vehicles that would pose an unreasonable risk of harm to others. Id. at 1171. This includes the duty to use their automobiles reasonably and to maintain a proper lookout for hazards which might pose an unreasonable risk of harm. Id.
While Stacey was attempting to proceed across a favored thoroughfare, the intersection of Ames Boulevard and Pritchard Street, Stacey was bound by LSA-R.S. 32:123(B), which provides in part:
[E]very driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
*787 When a motorist is confronted with a stop sign at an intersection, it is her duty to come to a complete stop, to appraise traffic, and to make certain that the way is clear before proceeding. Coleman v. Rabon, 561 So.2d 897, 900 (La.App. 2 Cir.1990), writ denied, 567 So.2d 617 (La. 1990); Vallery v. State Through Dept. of Transp. and Development, 480 So.2d 818, 822 (La.App. 3 Cir.1985), writ denied, 481 So.2d 1350 (La.1986). When a motorist stops her vehicle before entering a right-of-way street, she has performed only half of the duty which the law has imposed upon her. To stop and then proceed in the immediate path of oncoming vehicles constitutes gross negligence. Coleman, 561 So.2d at 900; Vallery, 480 So.2d at 822.
The record supports the trial court's conclusion that Stacey was negligent in failing to stop at a point where she could see the oncoming traffic and entering the intersection when it was not prudent for her to do so. Therefore, we find the trial court's findings of fact are not manifestly erroneous.

COMPARATIVE FAULT
Jefferson Parish argues that the trial court erred in failing to assess more than 20% fault to Stacey. Jefferson Parish further argues that Stacey had a heightened duty not to pull out from the position of safety. Plaintiffs respond that the trial court correctly apportioned the majority of fault to the Parish of Jefferson because the sight obstructions gave Stacey a false sense of safety and prevented her from being seen by Deputy Roddy.
The trier of fact is owed great deference in its allocation of fault and its findings may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La.01/16/96), 666 So.2d 607, 609-610. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Clement, 666 So.2d at 609-610. It is the Court of Appeal's duty to give deference to the trier of fact. An appellate court may reallocate fault only after it has found an abuse of discretion and then only to the extent of lowering or raising the percentage of fault to the highest or lowest point reasonably within the trial court's discretion. Hill v. Morehouse Parish Police Jury, 95-1100 (La.01/16/96), 666 So.2d 612, 614; Clement, 666 So.2d at 609-610.
The Parish of Jefferson claims that the trial court erred in not assigning a greater percentage of fault to Stacey. When the fault of a motorist and the fault of a governing body responsible for warning motorists against unusually dangerous road hazards combine to produce an accident, comparative negligence is applicable. Brown v. State Through Dept. of Transp. and Development, 572 So.2d 1058, 1063 (La.App. 5 Cir.1990), writ denied, 581 So.2d 710 (La.1991).
The principle of comparative fault is codified in LSA-C.C. art. 2323:
If a person suffers injury, death or loss as a result partly of his own negligence and partly as a result of the fault of another person, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
The proper allocation of fault requires an analysis of both parties' conduct. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La. 1985). In apportioning fault, the following factors are applied:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) how great a risk was created by the conduct;
(3) the significance of what was sought by the conduct;

*788 (4) the capacities of the actor, whether superior or inferior; and
(5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.
Watson, 469 So.2d at 974; Coley v. State, Dept. of Transp. and Development, 621 So.2d 41, 48 (La.App. 2 Cir.1993). The trial court did not provide reasons to support its judgment that Stacey was at fault, however, it is apparent from the record that she was familiar with the intersection and she had a duty to proceed with caution through the dangerous intersection.
While the trial court's written reasons for judgment do not reflect the trial court's specific application of the Watson factors, we nonetheless find no manifest or clear error in the trial court's assessment of fault in this case. Thus, we will not reassess fault.

PROPERTY DAMAGE
Jefferson Parish argues that the trial court erred in awarding Ernest T. Ruttley, Jr., property damage for his car when he was dismissed as a party plaintiff from this suit. Plaintiffs argue that while it is true that Ernest T. Ruttley, Jr., was dismissed from some claims by the Peremptory No Cause of Action exception, Ernest T. Ruttley, Jr., is entitled to his property damage award because the Parish of Jefferson stipulated to the amount.
LSA-C.C.P. art. 1841 states that "[a] judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled." A judgment cannot determine rights or award relief to persons or entities who are not parties to the litigation. LSA-C.C.P. art. 1841. Since Ernest T. Ruttley, Jr., was dismissed with prejudice as a party to this suit and was not a party to the litigation, the award to him was improper and is, therefore, reversed.

SURVIVAL DAMAGES
Jefferson Parish argues that the trial court erred in awarding survival benefits when the only testimony indicating that Stacey survived was presented by Ms. Hunter-Amedee. Mrs. Ruttley responds that the trial court did not abuse its discretion in awarding her $150,000.
Under LSA-C.C.P. art. 2315.1, the surviving father and mother of the deceased have an action for damages suffered by their child prior to her death. Damages for pain and suffering are properly awarded if there is a scintilla of evidence of any suffering or pain on the part of the deceased by her actions or otherwise. Prince v. Mattalino, 583 So.2d 541, 543 (La.App. 3 Cir.1991). The pain and suffering of a deceased are not assumed; nonetheless, awards in survival actions have been upheld as within the trial court's discretion even in the absence of testimony of the decedent's pre-death pain. Jones v. State Through Dept. of Health and Hospitals, 95-1130 (La.App. 3 Cir. 3/27/96), 671 So.2d 1074, 1080, writ denied, 96-1040 (La.5/31/96), 674 So.2d 263.
The Parish of Jefferson urges us to reverse the trial court's award for Stacey's pain and suffering because only Ms. Hunter-Amedee testified that Stacey was alive. In this case, there is the testimony of only one witness, Ms. Hunter-Amedee, that supports the proposition that Stacey was alive and suffered before her demise. However, as noted supra, the trial court has the discretion to award pain and suffering to a decedent in the absence of testimony regarding the decedent's pain and suffering. In this case, Ms. Hunter-Amedee testified that Stacey was breathing lightly and had a pulse. The trial court was within its discretion to find that Stacey survived the impact for a short time and suffered before her death. According to Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), an appellate court should not disturb an award for general damages unless the trier of fact abused the much discretion accorded *789 to it. The trial court, we find, did not abuse its discretion in awarding $150,000.00 in survival damages to Mrs. Ruttley for Stacey's pain and suffering.

BYSTANDER DAMAGES
Jefferson Parish argues that the trial court erred in awarding bystander damages to Mrs. Ruttley and Ms. Bolotte. Jefferson Parish argues that Mrs. Ruttley should not be awarded bystander damages because she did not see her daughter's body. Jefferson Parish maintains that the body's condition changed because a plastic tarp had been draped over it. Mrs. Ruttley responds that she was traumatized by the events at the scene of the accident. Jefferson Parish also argues that Ms. Bolotte should not be awarded bystander damages because she was not at the scene when her sister's body was still in the car. Ms. Bolotte responds that she was properly awarded damages because she saw all of the blood in the vehicle after the corner removed her sister's body.
In Louisiana, one can recover mental anguish damages for the negligent injuries sustained by a third person. Lejeune v. Rayne Branch Hosp., 556 So.2d 559, 570 (La.1990). Since the Lejeune decision, the Louisiana legislature codified the ruling in Lejeune in LSA-C.C. art. 2315.6.
Art. 2315.6. Liability for damages caused by injury to another:
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
(2) The father and mother of the injured person, or either of them.
(3) The brothers and sisters of the injured person or any of them.
(4) The grandfather and grandmother of the injured person, or either of them.
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.
In Trahan v. McManus, 97-1224 (La.3/2/99), 728 So.2d 1273, 1279, the Supreme Court explained the requirements of recovering bystander damages, stating that:
The requirements of Article 2315.6, when read together, suggest a need for temporal proximity between the tortious event, the victim's observable harm, and the plaintiffs mental distress arising from an awareness of the harm caused by the event. (FN8) The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent, (FN9) but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances. (FN10).
The Supreme Court noted that the observance of the injury-causing event that causes the decedent's injuries in the first place definitely entitles the decedent's loved ones to recovery bystander damages. Id. at 1280. Further, the Supreme Court notes that recovery of damages for mental anguish has almost never been extended to one who observed the victim's suffering at a place other than where the injury-causing *790 event occurred or at a time not closely connected to the event. Id. at 1279.
In a footnote in Trahan, 728 So.2d at 1282, the Supreme Court stated that:
In Lejeune, this Court stated that "the essence of the tort is the shock caused by the perception of the especially horrendous event.... The emotional injury must be directly attributable to the emotional impact of the plaintiffs observation or contemporaneous sensory perception of the accident and immediate viewing of the accident victim." 556 So.2d at 570, n. 11 (internal quotations and citations omitted). For the same reasons, recovery is not permitted when the plaintiff has merely been informed of the accident. See, e.g., Chamberlain v, State, Through D.O.T.D., 624 So.2d 874 (La.1993) (no recovery when victim's parents learned of accident from others).
In this case, Mrs. Ruttley did not see her daughter's body, but saw the canvas covering the car and her daughter's body when she arrived at the scene. From her observations and the representations of others, she was able to ascertain that her daughter did not survive the car crash. Clearly, she was able to realize that her daughter's injuries were serious, especially since the police officers would not permit her to approach Stacey's body. Even though Mrs. Ruttley did not actually see Stacey's body, Mrs. Ruttley did see the canvas that she knew covered her deceased daughter's body. Furthermore, she observed the removal of Stacey's body from the vehicle. We cannot say that the trial court abused its discretion in awarding Mrs. Ruttley bystander damages.
The record reflects that Ms. Bolotte arrived at the scene after Stacey's body had been removed from the car and that she was informed by others that her sister had passed away in the accident. While she did see Stacey's blood in the car, she did not view Stacey's body, nor did she ascertain the seriousness of the accident from the events transpiring at the scene. Accordingly, we find that the trial court did abuse its discretion in awarding bystander damages to Ms. Bolotte and we reverse this award.

SPECIFICATION OF ERROR 6: WRONGFUL DEATH BENEFITS.
Jefferson Parish argues that the trial court erred in awarding Mrs. Ruttley $300,000 in wrongful death benefits. Mrs. Ruttley responds that the trial court appropriately awarded her $300,000 in wrongful death benefits because they were a close family and her loss is great.
The record reflects that Stacey was an exemplary young woman who was loved and admired by her mother and siblings. The loss of life of a family member is always difficult to assess in terms of a monetary award. However, a monetary judgment is the only redress that the courts can award in this unfortunate incident. Given the evidence, we find that an award of $300,000 for wrongful death damages to Mrs. Ruttley is appropriate.
The standard for appellate review of general damage awards, as stated in Youn v. Maritime Overseas Corp., 623 So.2d at 1261 (La.1993) is "difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards give little guidance as to what articulation suffices to justify modification of a generous or stingy award."
Nevertheless, the theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that *791 the appellate court should increase or reduce the award. Youn, 623 So.2d at 1261.
We note that in Bryant v. Solomon, 97-2008 (La.App. 4 Cir. 3/25/98), 712 So.2d 145, 147-149, the Fourth Circuit affirmed an award of $300,000 to one parent for the wrongful death of an adult daughter. In Brown v. Louisiana Indemnity Co., 693 So.2d 270, 276-278 (La.App. 3 Cir.1997), affirmed in part and reversed in part, 97-1344 (La.3/4/98), 707 So.2d 1240, decedent was killed in a car accident and the appellate court affirmed the trial court award of $275,000 in wrongful death damages. In Owens v. Concordia Electric Cooperative Inc., 95-1255 (La.App. 3 Cir. 6/25/97), 699 So.2d 434, 447, writ denied, 97-2736 (La.1/9/98), 705 So.2d 1120, the appellate court reversed the jury's award of $1 million in wrongful death damages to each parent for being excessive and awarded $350,000 to each parent. Given the close and loving relationship that Stacey had with her mother, we cannot say that the trial court abused its discretion in awarding Mrs. Ruttley $300,000 in wrongful death benefits.
Accordingly, we affirm the trial court judgment finding the Parish of Jefferson 80% at fault and Stacey 20% at fault for this accident. Further, we affirm Mrs. Ruttley's bystander damage award, wrongful death award, and the survival award for Stacey's pain and suffering. We reverse Ernest Ruttley's property damage award and Ms. Bolotte's bystander damage award. Accordingly, we affirm in part, reverse in part, amend and render for the reasons assigned.
JUDGMENT REVERSED IN PART, AFFIRMED IN PART, AMENDED AND RENDERED.