MARION F. EDWARDS, Judge.
Defendants appeal from a trial court’s finding of liability and award of general damages in this automobile accident case. Plaintiffs also appeal the trial court’s award of general damages. For the foregoing reasons, the judgment of the trial court is amended, and affirmed as amended.
FACTS AND PROCEDURAL HISTORY
On May 6, 1999, a vehicle driven by Benedetto Dimacco (“Dimacco”)[1] was headed northbound on Pirate Drive toward Louisiana Highway 48 in St. Charles Parish. Parked on the shoulder of Louisiana Highway 48, at the intersection of Pirate Drive in front of a convenience store, was a delivery truck owned by Southern Eagle Sales and Services, Inc. (“Eagle”). Dimac-co, unable to clearly see the intersection because of the obstruction presented by Eagle’s truck, inched out into the roadway of Louisiana Highway 48, where he subsequently collided with ^another vehicle driven by Sonia Weal (“Weal”), in which Donald Collier (“Collier”) was a passenger. Both Weal and Collier sustained injuries as a result of the accident. Weal asserted that Eagle’s truck had also blocked her view of Dimacco’s vehicle entering the intersection until immediately before impact.
Weal and Collier thereafter filed suit against Dimacco, Imperial Fire & Casualty Insurance Company and Southern Eagle Sales and Service. After settling their claims against Dimacco, the plaintiffs case proceeded as a bench trial against the remaining defendants on November 3, 2003. The trial court found Eagle to be 90% at fault in causing the accident, and Dimacco 10% at fault. The trial court further awarded $13,878.10 in damages to *777 Weal, and $60,786.63 in damages to Collier.
Eagle timely filed the present appeal, and, in their answers, plaintiffs assert that their general damage awards are insufficient.
LAW AND ANALYSIS
On appeal, Eagle raises two assignments of error: 1) That the trial court’s was manifestly erroneous in its apportionment of fault, and; 2) The district court’s award of damages to Collier was an abuse of discretion.
In regard to Eagle’s contention that the trial court erred in its apportionment of fault, we note the standard of review as explained in Watson v. State Farm Fire and Casualty Ins. Co.,[2] in which the court held that the standard of appellate review in comparative fault determinations is the same as that for other factual matters, i.e. the manifest error rule. Watson went on to enumerate factors to be weighed in evaluating fault apportionments: l)whether the conduct resulted from inadvertence or involved awareness of the danger, 2)how great a risk was created by the conduct, 3)the significance of what was sought by the conduct, 4)the capabilities of the actor, whether inferior or superior and 5)any extenuating | ¡¡circumstances which might require the actor to proceed in haste, without proper thought.[3]
In the present case, the trial court gave a detailed explanation in its Reasons For Judgment pertaining to its allocation of fault against Eagle. Most significantly, the trial court found that, in parking its truck on the shoulder of Louisiana Highway 48 and leaving it unattended, Eagle violated LSA-R.S. 32:296, which states in relevant part:
A. No person shall stop, park, or leave standing any unattended vehicle on any state highway shoulder when such stopping or parking on the highway shoulder shall obstruct the flow of traffic or is a hazard to public safety, unless such stopping, parking, or standing is made necessary by an emergency, except:
(1) In those areas designated as parking areas by the Department of Transportation and Development, or ...
Based on a finding that Eagle had violated the above cited statute, the court concluded:
L.R.S. 32:296 prohibits the parking of any unattended vehicle on any state highway shoulder, when that parking on the highway would present a hazard to public safety. The parking of this beer delivery truck on the shoulder of Louisiana Highway 48 by the defendant’s driver-employee, under the circumstances of this case, created a hazard to public safety by obstructing the view of defendant Dimarco as he approached the intersection of Louisiana Highway 48 and additionally the view of the plaintiff, Sonia Weil as she traveled around the curve on Louisiana Highway 48 approaching its intersection with Pirate Drive. But for the obstruction presented by this parked beer delivery truck, I believe defendant Dimarco would have observed the oncoming car driven by the plaintiff, Sonia Weil, stopped his vehicle, then safely entered Louisiana Highway 48 to make his left turn, after the plaintiff had passed.
The above statute placed a duty upon the driver of the beer delivery truck, (not to park on the highway shoulder absent an emergency) the driver violat *778 ed this duty, the violation of this duty was the primary cause of this accident.
The trial court further explained that in making its determination of fault, it found no credibility in accident reconstruction photographs presented by either side, or in the testimony of Eagle’s delivery truck driver, David Frish. Concerning | fithe testimony of Dimacco, the court did find his testimony to be credible, based on the fact that his insurance company had previously settled the claim against him, and he was under no pressure to fabricate his story. Dimacco described at trial how by the time he could see clearly around Eagle’s parked truck, he had already entered the roadway. The court also explained that it found the Weil’s testimony, that she could not see Dimacco’s vehicle because of Eagle’s truck, credible as well. Based on the foregoing, the trial court allocated 90% fault to Eagle.
Eagle argues, however, that the trial court erred in not finding that the cause in fact of the accident was Dimacco’s failure to exercise an appropriate degree of care in this case. In support of this contention, Eagle first suggests that Dimacco violated La. R.S. 32:124 in that he failed to yield to oncoming traffic when entering a favored roadway. Eagle then claims that Dimacco breached a duty to “proceed with extraordinary caution” as he proceeded into a favored roadway when his view was obstructed. Finally, Eagle insists that if his view was obstructed, Dimacco could have used alternate routes to enter on to Louisiana Highway 48.
In its Reasons For Judgment, the trial court indicated that it had considered these same argument by Eagle at trial, but concluded:
This contention has some minimum merit. However, plaintiffs also established that the driver of the beer delivery truck could have parked off Pirate Drive, adjacent to the convenience store, and accordingly not have obstructed the view of persons entering Louisiana Highway 48 (River Road) from Pirate Drive. This contention is more meritorious.
The court further found, however, that Dimacco was 10% at fault in causing this accident by not reversing the direction of his vehicle and taking either of the two alternate entry routes to the highway.
In Ruttley v. Lee,[4] this Court noted:
7The trier of fact is owed great deference in its allocation of fault and its findings may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La.01/16/96), 666 So.2d 607, 609-610. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Clement, 666 So.2d at 609-610. It is the Court of Appeal’s duty to give deference to the trier of fact. An appellate court may reallocate fault only after it has found an abuse of discretion and then only to the extent of lowering or raising the percentage of fault to the highest or lowest point reasonably within the trial court’s discretion. Hill v. Morehouse Parish Police Jury, 95-1100 (La.01/16/96), 666 So.2d 612, 614; Clement, 666 So.2d at 609-610.[5]
Accordingly, after a review of the record, we cannot say that the trial court abused its discretion in the allocation of fault between the parties in this case, and we therefore refuse to make a reassessment.
*779 Eagle next argues that the trial court erred in its award of general damages to Collier, while conversely, Collier asserts that the trial court abused its discretion in awarding an amount to him below what a reasonable trier of fact could assess.
The standard for appellate review of general damage awards is whether the trial court abused its great discretion in fixing the award. In Youn v. Maritime Overseas Corp.,[6] the Supreme Court upheld the longstanding rule that an appellate court is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact, considering the particular injuries and their effects on the particular circumstances of the particular plaintiff.[7] Only when the appellate court determines that the trier of fact abused its much discretion, may the award be set aside as either too high or too low.[8]
In regard to Collier’s damages, the trial court considered the following testimony and evidence: Collier testified that as a result of the accident, he sustained injuries to his back, neck, knee, thigh and shoulder that resulted in his inability to perform heavy lifting at his employment with Delta Airlines and |sAmerican Airlines. Collier consulted a neurosurgeon, Dr. Kenneth Vogel, who ordered that Collier undergo a lumbar and cervical MRI. While the lumbar MRI was normal, however, Collier’s cervical MRI showed protrusion of the discs at C6/7 and C5/6.
Collier declined to consider surgery. On August 1, 2001, he was discharged from the Health Care Center, where he was receiving treatment for cervical and lumbar strains. Collier claimed at the time of trial that he was still experiencing pain in both his back and neck, and that he is unable to lift any significant amounts of weight.
Eagle contends, however, that no medical testimony was presented at trial, and that Collier’s own medical records show that he had a no back or neck pain, no knee pain, and had a full range of motion in his back and neck when he was discharged from the Health Care Center. Eagle further argues that Collier’s treatment consisted of “long gaps” in between. Eagle concludes that since Collier’s records indicated that all of his symptoms had resolved at the time of his discharge, that the award of general damages was excessive.
The Court made the following findings of fact in regard to the injuries sustained by Donald Collier as a result of the accident:
Regarding the plaintiff Donald Collier. Mr. Collier sustained a small right disc protrusion at C5-C6. Doctor Howard noted muscle spasms over the C4-C5 lumbar area of the spine in his July 31, 1999 and October 28, 1999-reports and a follow up cat-scan confirmed the presence of the small disc protrusion. I believe this evidence, and no evidence of any prior lumbar disc injury, establishes that this injury occurred as a result of this collision. Plaintiff Collier additionally sustained a cervical and lumbar muscle strains as a result of this accident. He incurred medical special damages (bills) in the amount of $5,718.75 and received medical treatment for his injuries from May 1999 until his release from treatment on August 2, 2001 for a treatment and/or symptomatic period of approximately twenty-seven months. *780 He was symptomatic during this period and continues periodically to experience back pain depending on the level of his physical activity.
|nThe court then awarded Collier $50,000 in general damages, $5,718.75 in medical special damages and $11,821.95 in lost wage damages.
In this present case, while we find no error in the trial court awarding damages to Collier, we have reviewed the record and find that the trial court’s total award of $50,000 in general damages is abusively low. Mr. Collier sustained injuries to his back, neck, knee, thigh and shoulder, a small right disc protrusion at C5-C6, and cervical and lumbar muscle strains. After a treatment period of approximately twenty-seven months, the record shows that Collier still remained symptomatic, even through the date of trial. A review of cases in which similar injuries were sustained lead us to the conclusion that an award of $75,000.00 is the lowest award that was reasonably within the trial court’s discretion, and we amend the judgment accordingly.
Finally, we consider Sonia Weal’s assignment of error that the trial court erred in its award of general damages to her. As with Collier, no medical experts testified on Weal’s behalf at trial, and the court was presented with medical reports in addition to Weal’s own testimony. Weal testified that she had been involved in two prior automobile accidents, before the accident at issue. Weal stated that she previously sought treatment for a back injury after a 1996 accident, and also stated that she was still having problems from the previous accident at the time of the collision at issue. Weal was also involved in another collision after she had been discharged from the accident with Dimacco. Weal testified that she did not seek medical treatment until eight days after the accident. The record showed that Weal was discharged from treatment in November 1999, but, at the time of trial, Weal stated that she still experienced back pain a few times a week.
In regard to Weal, the trial court made the following findings of fact:
[Weal] suffered a cervical and lumbar muscle strain and facial contusions. She treated medically for approximately seven months and incurred $1,878.10 dollars in medical expenses. The impact of |inthe collision was significant-the property damage to her car was approximately $6,000.00. I believe an award of $12,000.00, general damages, in addition to the medical special damages of $1,878.10 dollars, minus ten percent (10%) attributable to the comparative fault assigned to the defendant Benedet-to Dimarco, will fairly compensate her for her damages.
After a review of the record, we find that the trial court’s total award of general damages to Weal is abusively low as well, and after a review of cases in which similar injuries were sustained, we amend the trial court’s award of general damages to Weal to $28,000.00, the lowest award that was reasonably within the trial court’s discretion.
Accordingly, for the foregoing reasons, the trial court’s judgment is amended and affirmed as amended.

AMENDED; AFFIRMED AS AMENDED.

. We note that throughout the pleadings in this case, defendant is referred to as "Dimac-co Benedetto”, however, throughout this opinion we will refer to defendant by the name as given in his September 28, 2000 deposition.

. 469 So.2d 967 (La.1985).

. Id.

. 99-1130 (La.App. 5 Cir. 5/17/00), 761 So.2d 777.

. Id. at 787.

. 623 So.2d 1257 (La. 1993).

. Id.

. Id.