WALTER J. ROTHSCHILD, Judge.
| sIn this wrongful death and survival action, plaintiffs appeal from a summary judgment granted in favor of defendants. For the reasons stated more fully herein, we affirm the ruling of the trial court.

Facts and Procedural History

This litigation arises from a motor vehicle accident which occurred-on November 24, 1997 at the intersection of Evans Road and River Road in Jefferson Parish. The driver of one of the vehicles, Shawn M. Tastet, was critically injured in the accident when his vehicle was struck by a dump truck. His parents, Richard Tastet and Sylvia Tastet, filed the present lawsuit on his behalf on November 20, 1998. Shawn Tastet died in 2004 as a result of injuries sustained in the accident, and his parents were substituted as plaintiffs in this lawsuit.
In their original petition, plaintiffs named as defendants Charlie May, Jr., the driver of the dump truck involved in the accident, and May’s employer and its insurer. Plaintiffs subsequently amended their petition to name as defendants E.B. Ludwig, Jr., the owner of a fence which plaintiffs alleged obstructed their son’s view at the intersection, and the Parish of Jefferson and Road District No. 1, whom plaintiffs alleged were responsible for maintenance of the intersection. Plaintiffs also added as defendant | travelers Property Casualty, the commercial general liability insurer of the Parish of Jefferson and Road District No. 1.
Defendants, E.B. Ludwig, Jr., the Parish of Jefferson, Road District No. 1 and Travelers Insurance Co., subsequently filed separate motions for summary judgment on the basis no genuine issues of fact remain as to their liability for this accident. These motions were heard by the trial court on March 24, 2005. By judgment rendered on April 27, 2005, the trial court granted defendants’ motions, dismissing the claims of plaintiffs with prejudice. Plaintiffs now appeal from this judgment, arguing that issues of fact preclude summary judgment in this ease.

Summary Judgment Standard

Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Bua v. Dressel, 96-79 (La. App. 5th Cir.5/28/96), 675 So.2d 1191; unit denied, 96-1598 (La.9/27/96), 679 So.2d 1348; citing Reynolds v. Select *657 Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law. Tassin v. City of Westwego, 95-307 (La. App. 5th Cir.12/13/95), 665 So.2d 1272. The appellate court must consider whether the, summary judgment is appropriate under the circumstances of the case. Rowley v. Loupe, 96-918 (La.App. 5th Cir.4/9/97), 694 So.2d 1006. There must be a “genuine” or “triable” issue on which reasonable persons could disagree. Id. at 1008.
I,Hinder the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show “that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” A material fact is one that would matter on the trial of the merits. J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5th Cir.2/14/96), 670 So.2d 1305.
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the trial court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the trial court that there is an absence of factual support for 'one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
In considering expert opinion testimony at the summary judgment stage, Louisiana has adopted the Daubert standard for admissibility of expert opinion evidence. In Independence Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, 235-36, the Supreme Court stated:
Thus, having determined that, rather than automatically excluding expert opinion evidence at the summary judgment stage, the Daubert-Foret standards should be considered by the trial judge in deciding whether to admit expert opinion evidence, several important underlying principles must be reinforced. The first is that the trial judge cannot make credibility determinations on a motion for summary judgment. Second, the court must not attempt to evaluate the persuasiveness of competing scientific studies. In performing its gatekeeping analysis at the summary | ^judgment stage, the court must “focus solely on the principles and methodology, not on the conclusions they generate.” Third, the court “must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion.” Fourth, and most importantly, summary judgments deprive the litigants of the opportunity to present their evidence to a jury and should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. If a party submits expert opinion evidence in opposition to a motion for summary judgment that would be admissible under Daubert-Foret and the other applicable evidentiary rules, and is sufficient to allow a reasonable juror to conclude that the expert’s opinion on a material fact more likely than not is true, the trial judge should deny the *658 motion and let the issue be decided at trial.
Applying these principles, we will examine each of the motions for summary judgment filed in this case as well as the plaintiffs’ opposition and supporting documentation attached thereto.

Plaintiffs’ claims against the Parish of Jefferson and Road District

In this suit against the Parish, the plaintiffs must establish that the thing which caused the damage was in the custody of the defendant, that the thing was defective because it had a condition which created an unreasonable risk of harm, that defendant had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause in fact of plaintiffs injuries. Bessard v. State, Dept. of Transp. and Development, 94-0589 (La.11/30/94), 645 So.2d 1134, 1136. The Parish of Jefferson has a duty to maintain public roads in a safe condition so as not to expose the public to unreasonable dangers. Ruttley v. Lee, 99-1130 (La.App. ,5 Cir. 5/17/00), 761 So.2d 777, 785 writ denied, 2000-1781 (La.9/22/00), 768 So.2d 1287. The Parish of Jefferson, while not the insurer of the safety of drivers using state highways, cannot knowingly allow a condition to exist that is hazardous to a reasonably prudent motorist. Id.
|7In its motion for summary judgment, the Parish and the Road District argue that there is an absence of factual support for the elements of plaintiffs’ claims. Specifically, defendants argue that plaintiffs have failed to produce evidence sufficient to support their claim that the intersection was defective pursuant to the requirements of La. R.S. 9:2800. They also contend that plaintiffs failed to produce factual support to show they' met the requirement that the public entity had actual or constructive- notice of the alleged defect at the intersection.
In support of its motion, the Parish and Road District No. 1 submitted the deposition testimony of Charlie May, the driver of the dump truck, who testified that Shawn Tastet did not yield the right of way before entering the intersection. Mr. May testified that prior to the accident he saw Shawn Tastet’s head looking straight ahead and not toward his lane of traffic. The evidence also indicates that the dump truck was near intersection at the time Shawn pulled onto River Road. Defendants also rely on the voluntary statement of Suzanne McKey who was traveling behind the dump truck at the time of the accident, and stated that the dump truck was not speeding but that the vehicle from Evans Road pulled right out in front of the truck.
Defendants also submitted the testimony of Douglas Roberts, the traffic engineer for the Parish, who stated that the stop sign conformed to regulations on traffic devices, and that there was no mandatory requirement to place a stop line at the intersection. Mr. Roberts explained that the intersection was referred to as a “wide-throat” intersection, and the stop sign was placed away from the actual corner to allow for a radius for turning trucks.
| ¡¡Defendants also rely on the deposition testimony of Dr. Olin Dart, a traffic engineering expert who was retained by plaintiffs, who stated that if Shawn Tastet had pulled up to the closest point at which he could have seen upcoming traffic, he would have been able to see the dump truck. Defendants rely on this testimony to show that an adequate sight line exists at this intersection if a motorist complies with the requirements of La. R.S. 32:123(B).[1]
*659 In opposition to this motion, plaintiffs submitted the deposition testimony of Duaine Evans, a traffic engineer who stated that he found the fence at this intersection to be a sight obstruction and the cause of this accident. Mr. Evans stated that the intersection as it existed on the date of the accident is unreasonably dangerous because it requires a driver, without an adequate reference point provided by the Parish, to position his vehicle so close to River Road, before an adequate view of oncoming traffic on River Road can be obtained, so the driver is in danger of encroaching his vehicle onto River Road. He testified that it was possible, although difficult, for a driver in the same type of vehicle Shawn was driving to stop at the intersection at a point where oncoming traffic could be seen while keeping the vehicle from protruding onto River Road. Mr. Evans also testified that the stopping distance of 4 feet from an intersection is not considered safe, although he admitted that this was the distance required by the traffic regulations.
IflMr. Evans reviewed the previous accidents which occurred in the several years before this accident, and found several incidents which indicated the intersection was defective and the fence was a sight obstruction. However, only two of these accidents occurred prior to November 24, 1997, the date of the present accident and it is unclear whether the presence of the fence or the condition of the intersection was a factor in these accidents.
Plaintiffs also submitted the affidavit of A.J. Valenti, an investigator who conducted a videotaped experiment of this intersection to determine the sight distances. He concluded that the fence restricted a driver’s view of River Road traffic until he was approximately 8 feet from River Road.
Plaintiffs contend that the Parish is responsible for the permitting of the fence, the placement of the stop sign, and the lack of stop lines at this intersection, all of which contributed to the defective condition of the intersection. Plaintiffs argue that the Parish had the required notice of the defective condition as it was aware of the previous accidents at this intersection.
The undisputed facts of this case indicate that the stop sign controlling the intersection was placed on Evans Road 38 feet back from River Road. There is no dispute that the placement of the sign was in conformation with the Manual for Uniform Traffic Control Devices and parish regulations. Further, the Parish issued a building permit authorizing Ludwig to construct the fence at this intersection on August 8, 1973, and the fence was constructed according to specifications.
At the point where the stop sign was placed, no driver could obtain a sight line to River Road because of the presence of the fence. As such, the |indriver was required to pull his vehicle close up to the intersection of the two roadways in order to achieve an adequate sight line. The Manual for Uniform Traffic Control Devices requires a minimum stopping point of 4 fee from an intersecting road. The facts also indicate that once a driver pulled his vehicle to within four feet of the intersection, the driver had an adequate sight line of approaching traffic on River Road.
*660 Under the circumstances presented here, we find that plaintiffs have failed to meet their burden to defeat the summary-judgment filed by the Parish in this case. The undisputed facts presented fail to support plaintiffs’ argument that the intersection in this case was unreasonably dangerous. Although the stop sign was not placed directly on the corner of the intersection, this did not violate traffic regulations and was actually required for this type of intersection. Further, the evidence also indicates that although the fence blocked a driver’s view at the stop sign, it also shows that if the driver pulled up to the intersection as required by La. R.S. 32:123, an adequate sight line existed to see oncoming traffic. In addition, the evidence shows that the fence was not placed in violation of law and did not obstruct a driver’s view of River Road if the driver complied with law and stopped at the intersection.
Finally, plaintiffs have failed to produce documentation of complaints or notices to the Parish of a dangerous condition at the intersection, and the evidence regarding prior accidents at this intersection fails to create an issue of fact regarding whether this intersection was defective. Although the expert testimony presented by plaintiffs concludes that the intersection was dangerous, the evidence presented does not support such a conclusion. We conclude that the expert opinion testimony offered is not of sufficient quality |nor quantity to allow a reasonable juror to conclude that the expert’s opinion is more likely than not true. We therefore find that summary judgment in favor of the Parish was properly granted in this case.

Plaintiffs’ claims against E.B. Ludwig, Jr.

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. La. C.C. art. 2317.1. Plaintiffs argue that as a property owner adjoining this intersection, Ludwig should have been aware that the intersection was unreasonably dangerous because of the position of the fence. They rely on Ludwig’s deposition testimony in which he admits that a driver stopped at the stop sign at this intersection could not see oncoming traffic in either direction on River Road because of the presence of building and the fence at this intersection.
In support of its motion for summary judgment, E.B. Ludwig, Jr. argues that there is no support for plaintiffs claim that Ludwig had notice of any defects in this intersection as is required by La. C.C. art. 2317.1. Ludwig attached his deposition testimony, in which he stated that he had owned the property since 1973 and that the fence was constructed according to the specifications of a Parish permit in 1974. He stated during this 23 year period, he was not aware of any accidents at this intersection which would have been related to the presence of his fence. Although he testified that he was aware that the fence obstructed a driver’s view of River Road from the stop sign placed at the intersection, he knew that if a driver pulled 11gup to within a few feet of the actual intersection, there was an adequate sight line in both directions on River Road.
In plaintiffs’ opposition to this motion for summary judgment, they fail to present any competent or admissible evidence to show how they will meet their burden at trial of proving that Ludwig had notice that the presence of the fence at this intersection created an unreasonably dangerous situation. After Ludwig pointed out to the *661 trial court that there was an absence of factual support for this element of plaintiffs’ claim, the burden shifted to plaintiffs to produce factual support sufficient to establish that they will be able to satisfy their evidentiary burden at trial. Our review of the record shows that plaintiffs have failed to meet this burden as to the notice requirement in its claim against Ludwig. Accordingly, there is no genuine issue of material fact as to this defendant. La. C.C.P. art. 966(c)(2). Summary judgment as to this defendant was property granted.

Conclusion

Accordingly, for the reasons assigned, we find no genuine issues of material fact which preclude summary judgment in this case. The trial court’s judgment is therefore affirmed.

AFFIRMED.

. La. R.S. 32:123 B provides: Except when directed to proceed by a police officer or *659 traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.